MONCURE, P.
This is a writ of error to a judgment of the county court of King William, rendered on the 33d day of October, 1877, against the plaintiff in error, Charles Lawrence, in a prosecution for rape. It was charged in the indictment that the said Charles Lawrence, “on the eighth day of August, in the year one thousand eight hundred and seventy-seven, and in the county aforesaid, with force and arms on and upon one Serena Coleman, a female child under the age of twelve years, to-wit: of the age of eleven years and eleven months, feloniously did make-an assault; and her, the said Serena Coleman, then and there unlawfully, feloniously, violently and against her will, and by force did ravish and carnally know her, the said -Serena Coleman, against the peace and dignity of the Commonwealth of Virginia.” The accused pleaded not guilty to the charges against him in said indictment alleged. The case was tried by a jury, which found a verdict against him in these words: “We, the jury, find the prisoner guilty, and ascertain his term in the state penitentiary to be ten years.”
The accused moved the court to set aside the verdict, and grant him a new trial; which motion was overruled *and judgment was rendered according to the verdict. The accused applied to the judge of the circuit court of said county for a writ of error to the said judgment, which writ of error was refused. He then applied to this court for such writ, which was accordingly awarded.
There were various assignments of error in the judgment, most of which were made in the petition for a writ of error to the judge of the circuit court. But an additional one was made in the petition for such a writ to this court. And still another in the oral argument of the case before this court. We will proceed to notice and dispose of these assignments of error in the order in which they were relied on in the said arguments; and,
First. The assignment made for the first time in the said petition for a writ of error to this court, which assignment is in these words: that by the record “it appears that a panel of sixteen jurors only were summoned in the case; whereas, by the law, the panel should have been composed of twenty-four, from which the jury should have been selected; and that they were not sum *281 moned under a venire facias, or drawn in the manner provided by law.”
It is stated in the record that “the defendant, being arraigned, pleaded not guilty to the charges against him in said indictment alleged. And a panel of sixteen jurors summoned by the sheriff, were examined by the court and found free from all legal exceptions, and qualified to serve as such jurors according to law. Whereupon, the prisoner erased from the panel four of the jurors, and the remaining twelve constituted the jury for the trial of the accused, to whom there was no objection, to-wit:” &c. And this is all that is said in the record about the summoning and constituting the jury.
The Code, ch. 203, §§ 4, 5 and 9, pp. 1245-6, as amended by the act of 1875-6, ch. 167, pp. 207-8. provides for the issuing of a venire facias and the summoning *and constitution of a jury for the trial of persons accused of felony; and it is provided in section 9, as amended, that the directions of the statute shall be pursued “until a panel of sixteen jurors, free from exception, be completed. The accused shall have a peremptory challenge as to four of the panel, and the remaining twelve shall constitute the jury for the trial of the case,” &c. There can be no doubt but that a venire facias was issued and other proceedings thereon had as aforesaid, though the same are not set out in the record, except from the completion of the panel of sixteen jurors as aforesaid, which fact, and the further proceedings had in the dase in regard to the jury, are set out. It does not appear in the record that there was an irregularity in any of these proceedings. If there had been, it might, and no doubt would have been excepted to by the accused, who had counsel in court at the' time, and thus put upon the record. There having been no such exception, the presumption is there was no such irregularity. In Stephens’ case, 4 Leigh 679, it was held that in the trial for a capital felony it is not necessary that it should be expressly stated in the record that the petty jurors were freeholders, and that a motion in arrest of judgment because several of the petty jury were not freeholders; this being matter of fact not appearing in the record, is not a good reason for arresting judgment. In Bristow’s case, 15 Gratt. 634, it was held that an objection to the mode of selecting the jury in a trial for murder, must be made at the time the jury are chosen, and the prisoner cannot avail himself of it after verdict. The principle of those cases applies to this.
We are therefore of opinion that there is no error in the' judgment in this respect.
Second. The next assignment of error noticed in the argument, is one which was there noticed for the first time, not having been made in the petition for a writ of *error, either to the circuit court or to this court. That assignment of error is that it does not uappear from the record that the jury were duly sworn, or rather that it appears that they were not duly sworn.
The counsel for the plaintiff in error, to show the proper form of the oath to be administered to the jury in such cases, refers to 3 Rob. Pr. old ed. p. 174, where the following form is given: “You shall well and truly try and true deliverance make between the Commonwealth and the prisoner at the bar, whom you shall have in charge, and a true verdict give according to the evidence; so help you God.” Also to Matthew’s Criminal Dig. p. 293, note 14, in which the same form is stated.
There can be no doubt of the correctness of this form, which is generally, if not always, pursued in cases of felony, and was no doubt pursued in this case. But it is not prescribed by any law, common or statute, and one of the same import would be sufficient. It is not necessary that the form should be copied in the record, but sufficient that the jury should therein appear to have been duly sworn.
We are of opinion that it so appears in this case. It is stated in the record, after setting out the facts in regard to the arraignment and plea of the accused, and the constitution and names of the jury summoned and impanelled for his trial, that they “were sworn the truth of and upon the premises to speak.” Now, this was obviously not the form of the oath administered to the jury, but was merely intended to be a statement of the fact that the jury was duly sworn. In saying that they “were sworn the truth of and upon the premises to speak,” reference was made bv the word premises to the proceedings immediately set forth, to-wit: the indictment, the arraignment, the plea, and the constitution of the jury. And the effect is the same as if it had been said *that the jury were sworn “well and truly to try and true deliverance make between the Commonwealth and the prisoner at the bar, and a true verdict give according to the evidence.” The prisoner and his counsel were in court when the jury were sworn, and might, and no doubt would, have objected if the jury had not been properly sworn. That no objection was made, shows that they were properly sworn.
Third. The next assignment of error noticed in the argument is the first assigned in the petition to the circuit judge, and is in these words: “By reference to the second page of said record it appears that the prisoner was not present when he was arraigned, but appeared by attorney. He should have been present, and the record should show that he was present. And again on the second and third pages of the record it appears that when the jury returned into court and rendered theii; verdict the petitioner was not present, but the record shows appeared by his attorney.
It was a principle of the common law, that a person tried for felony shall be personally present during the trial, and this has been expressly declared by statute in Virginia ever since the act of 1847, p. 148, § 2-4. See Code, ch. 202, § 3, p. 1245. And the fact of such appearance must appear on the record. 1 Ch. Cr. Law, p. 414; 3 Rob. Prac., old, 267; Mat. Cr. Dig. p. 276, § 3, note 2; State v. *282 Able, decided by the supreme court of. Missouri in April, 1877, and reported in No. 13, vol. 4, of the Law and Equity Reporter.
But the question has been expressly decided in this state in Sperry’s case, 9 Leigh 633, in which it was held by the late general court that in a prosecution for felony the accused must be arraigned and plead in person, and in all the subsequent proceedings he must appear in person, not by attorney, and such appearance in person must be shown by the record. See also Hooker’s case, 13 ,*Gratt. 763; though in Boswell’s case, 20 Id. 860, it was held that the act which provides that a person tried for felony shall be personally present during the trial does not apply before his arraignment, but before his arraignment an order may be made in his absence.
The question in this case, therefore, is whether the accused was not personally present during the trial, and whether that fact does not appear on the record.
We are of opinion that he was so present, and that the fact so appears on the record.
It is stated in this assignment of error, as we have seen, that the prisoner was not present when he was arraigned, but appeared by attorney. He had a right of course to appear by attorney, and the fact that he so appeared does not show that he was not then personally present in court, and if it otherwise appears from the record that he was then personally present, it will be sufficient.
We think that it does otherwise so appear. It is not stated that the prisoner was arraigned by attorney, which would certainly have been a very singular process. But it is merely stated that he was arraigned, which seems, ex vi tirminii, to imply that he was then personally present. Again, it is said in the same connection, that “the prisoner,” not his attorney, “erased from the panel four of the jurors,” &c.; which seems also to imply that he was then personally present. But what seems to .be conclusive on the subject, is that at the conclusion of the proceedings of the court on that day, it is stated in the record that “the said Charles Lawrence is thereupon remanded to jail”; which shows that he had been personally present during all the proceedings which were had in the case on that day.
Again, it is stated in this assignment of error, as we have seen, that when the jury returned into court *and rendered their verdict, the petitioner was not present, but the record shows appeared by his attorney.
The prisoner was no doubt present in court on .the morning of the second day of the trial when the jury were brought into court by the sheriff who had them in charge, and again sent out of court to consult of their verdict. But whether he was or not, they might have been carried to their room, which was the proper place for them until they agreed on their verdict, by the sheriff who had them in charge, and without any order of court for the purpose. Of course such an order, even though made without the personal presence of the prisoner, would not be an error in the proceedings. When on the same day the jury returned into court with their verdict, and a motion was made to set it aside and grant a new trial, which was overruled, and judgment was thereupon pronounced against the prisoner, he was, no doubt, personally present ini court, for it is stated at the conclusion of the proceedings of that day, that “the prisoner is thereupon remanded to jail.”
In_ Sperry’s case, supra, the court said: “If it can be inferred from the circumstances that the prisoner was remanded to jail, that he was personally present during the proceedings on the 28th of April, when the verdict of conviction was found, there is no such circumstance stated in the proceedings of the preceding day. The only statement in regard to the appearance of the prisoner on that day, is that he appeared by his attorney, without any circumstance stated from which it can necessarily be inferred that he was personally present. An appearance by attorney, cannot imply that “the court erred, as set forth in the court; and therefore, the record is deficient in what the law regards as essential to be stated in such a case.”
In Hooker’s case, supra, there was noth- » ing in the record to show the personal presence of the prisoner in *court when the proceedings complained of were had against him, and therefore they were held to be erroneous.
Fourth. The next assignment of error is that “the court erred, as set forth in the first bill of exceptions, in allowing the Commonwealth’s attorney to introduce, upon the examination of witnesses in chief to sustain the charge, two witnesses, whose names were not written at the foot of the indictment, and who had not been summoned. and of the intention to examine which no notice, whatever, had been given to the petitioner. And thus the accused had no opportunity to impeach said witnesses, or to contradict their statements.”
No authority was referred to to sustain the position here asserted, and certainly it is unsustainable. We are of opinion that there is no error in the judgment in this respect.
Fifth. The next assignment of error is that the court erred, in refusing to give the two instructions set out in the second bill of exceptions. They are as follows:
1st. “The jury are instructed that they cannot find the accused guilty of any of-fence under the indictment if they believe from the evidence that the girl, Serena Coleman, consented;” and,
2d. “The jury are instructed if they believe the accused did have carnal connection with Serena Coleman by her consent, and that she was under twelve years old, yet they cannot find him guilty if they also believe from the evidence, that she stated to him she was twelve years old, and that he had reasonable cause to believe that she was twelve years old.”
The law on which this case is founded is as follows:
*283 “If any person carnally know a female of the age of twelve years or more, against her will by force, or carnally know a female child under that age, he shall be, at the discretion of the jury, punished by death or confined *in the penitentiary not less than ten nor more than twenty years.”
It seems not to have been perfectly certain whether the prosecutor was under or over twelve years of age at the time of the alleged injury complained of; and therefore it was charged in the indictment in such manner as to be sustained by the evidence according to either alternative. The indictment might properly have contained two counts, one of them charging that she was of the age of twelve years or more, and the other that she was under that age when the alleged offence was committed — the former charging that the carnal knowledge was “against her will, by force.” and the latter omitting the words “against her will, by force.” Instead of that, the indictment contains but one count, which charges the of-fence in both aspects — that is, that the accused, “with force and arm in and upon one Serena Coleman, a female child under the age of twelve years, to-wit: of the age of eleven years and eleven months, feloniously did make an assault on her, the .said Serena Coleman, then and there unlawfully, feloniously, violently, and against her will and by force, did ravish and carnally know her, the said Serena Coleman, against the peace.” &c. Under this indictment the accused might properly have been convicted generally, or of either alternative embraced in the indictment, according to the evidence.
We believe that the court did not_ err in refusing to give the first of the said two instructions to the jury; that is, “that they cannot find the accused guilty of any of-fence under the indictment if they believe from the evidence that the girl Serena Coleman consented.” Now, if she was under twelve years of age, her consent was immaterial, and the accused may have been found guilty, notwithstanding her consent.
We also believe that the court did not err in refusing to give the other of the said two instructions to the jury; *that is, that “if they believe the accused did have carnal connection with Serena Coleman by her consent, and that she was under twelve years old, yet they cannot find him guilty if they also believe from the evidence that she stated to him she was twelve years old, and that he had reasonable cause to believe that she was twelve years old.” The offence of having carnal knowledge of a female under twelve years of age is entirely independent of and unaffected by any consent of hers, or any statement of hers to him in regard to her age, or any belief, or reasonable cause of belief, on his part that she was twelve years old. If he choose to have carnal connection with a female, he must do the act at his peril in regard to her being under the age of twelve years.
Sixth. The next and last assignment of error is that the court erred in refusing to set aside the verdict and grant a new trial, because the verdict was contrary to the law and the evidence, as stated in the third bill of exceptions, in which the facts proved on the trial are certified.
Before taking any further notice of them, it seems proper to notice here an objection taken to the verdict in the petition to this court, in which it is said that the verdict is entirely too uncertain. It is in these words: “We, the jury, find the prisoner guilty,'and ascertain his term in the state penitentiary to be ten years.” It is objected that “the law fixes imprisonment as a punishment, but the verdict does not, and the judgment directs imprisonment.” We think there is nothing in this objection, and that the verdict is sufficiently certain.
In regard to the question whether the verdict is contrary to the law and the evidence, we have had more difficulty than on any other question arising in the case. The question was fully and ably discussed by counsel, who cited and relied on various authorities, and which are 1 Russell on Crimes, ch. 5, § 2, pp. 693-7; Taylor’s Medical *jurisprudence, ch. 58, pp. 700-4; Boxley’s case, 24 Gratt. 649. But without reviewing these authorities, or the facts certified in the record as having been proved on the trial, we are of opinion that while we would probably have given a verdict of not guilty if we had been upon the jury, or set aside the verdict which was given and granted a new trial, if we had presided at the trial, yet it is not a case in which this court can properly reverse the judgment for any supposed error therein in that respect, as will appear by reference to Read’s case, 22 Gratt. 924, and the cases therein referred to and commented on. We must, therefore, affirm the judgment, which we now do. But, for the reasons aforesaid, we are unanimously of opinion that the case is a proper one for the exercise of executive clemency, and we therefore recommend that a pardon be granted by the governor of this Commonwealth to the accused for the offence of which he has been convicted as aforesaid.
CHRISTIAN, STAPRES, and BURKS, J’s, concurred in the opinion of MONCURE, P.