788 P.2d 220

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Jason Ray STIFFLER,
Defendant–Appellant.**

No. 17846.

Supreme Court of Idaho.

March 6, 1990.

Alan E. Trimming, Ada County Public Defender, Richard D. Toothman (argued), Deputy, Boise, attorneys for defendant-appellant.

Jim Jones, Atty. Gen., Michael A. Henderson, Deputy Atty. Gen., of Boise, attorneys for plaintiff-respondent. Michael A. Henderson argued on rehearing.

JOHNSON, Justice.

This is a statutory rape case. The only issue presented is whether it would be a defense to this charge if the defendant reasonably believed that the female with whom he had sexual intercourse was at least eighteen years old. The trial court ruled that this would not be a defense. The Court of Appeals affirmed the trial court's ruling. *State v. Stiffler*, 114 Idaho 935, 763 P.2d 308 (Ct.App.1988). We affirm the decisions of the Court of Appeals and the trial court and hold that a reasonable mistake of fact concerning the female's age does not disprove criminal intent in a statutory rape case.

I.

THE BACKGROUND AND PRIOR
PROCEEDINGS.

Jason Stiffler was charged with three counts of statutory rape of a fifteen-year-old female. Initially, he pled not guilty. Prior to trial the State requested an instruction stating that "it is not a defense that the defendant did not know the age of the minor child involved." Stiffler objected and contended that a mistake as to the female's age should be a defense and that the jury should be so instructed. The trial court ruled that the State's requested instruction was not a misstatement of the Idaho law and that Stiffler was not entitled to have the jury instructed that mistake of age was a defense.

After this ruling, Stiffler entered a conditional guilty plea, reserving his right to appeal the trial court's ruling on the mistake of age defense. Following sentencing, Stiffler appealed and we assigned the case to the Court of Appeals. The case is

now before this Court for review of the decision of the Court of Appeals affirming the trial court's ruling.

## II.

### MISTAKE OF AGE IS NOT A DEFENSE TO A CHARGE OF STATUTORY RAPE.

■ Statutory rape in this state "is an act of sexual intercourse accomplished with a female ... under the age of eighteen (18) years." I.C. § 18–6101(1) (1987). Our law also provides: "In every crime or public offense there must exist a union, or joint operation, of act and intent, or criminal negligence." I.C. § 18–114 (1987). A person is not capable of committing a crime, if the person who committed the act that is charged did so "under an ignorance or mistake of fact which disproves any criminal intent." I.C. § 18–201(1) (1987). The precise question we must address in this case is whether any mistake Stiffler may have had about the age of the female with whom he had sexual intercourse would disprove the criminal intent required before he could be convicted of statutory rape.

In *State v. Sterrett,* 35 Idaho 580, 207 P. 1071 (1922), this Court summarized the law of criminal intent as it had developed in Idaho to that time:

> At common law a crime possessed the element of an evil intention together with an unlawful act, but the rule is well established that it is competent for the legislature to prohibit the doing of a particular act and to provide a penalty for the violation of the prohibition. (1 Wharton's Criminal Law, 11th ed., sec. 143, p. 187.) This court held in *State v. Keller,* 8 Ida. 699, 70 Pac. 1051, that: "Wicked or wilful intent to violate the criminal law is not an essential ingredient in every criminal offense. And that is so in statutory offenses when the statute does not make the intent with which an act is done an ingredient of the crime. The rule is that in acts *mala in se* the intent governs, and in acts *mala prohibita,* the intent does not govern, and the only inquiry is, 'Has the law been violated?'"

....

> Whether a criminal intent is a necessary element of a statutory offense is a matter of construction, to be determined from the language of the statute in view of its manifest purpose and design, and where such intent is not made an ingredient of the offense, the intention with which the act is done, or the lack of any criminal intent in the premises, is immaterial.

35 Idaho at 582–83, 207 P. at 1072.

More recently this Court has characterized criminal intent as being either general or specific: "A general criminal intent requirement is satisfied if it is shown that the defendant knowingly performed the proscribed acts, *State v. Booton,* 85 Idaho 51, 375 P.2d 536 (1962), but a specific intent requirement refers to that state of mind which in part defines the crime and is an element thereof. Lafave & Scott, Criminal Law, § 28, p. 196." *State v. Gowin,* 97 Idaho 766, 767–68, 554 P.2d 944, 945–46 (1976). The focus on the distinction between acts *mala in se* and acts *mala prohibita* in *Keller* was replaced in later cases by a focus on the distinction between crimes requiring some specific criminal intent and those requiring only general criminal intent.

In order to resolve the issue presented here, we must determine whether commission of the crime of statutory rape requires any specific intent. To make this determination we must construe I.C. § 18–6101(1) "in view of its manifest purpose and design," as directed in *State v. Sterrett.* If we were to determine that statutory rape requires only general intent, mistake of age would not be a defense, since any mistake of age would not disprove that Stiffler had sexual intercourse with a female under the age of eighteen. Proof of intercourse with a female under the age of eighteen would be sufficient to convict. On the other hand, if we were to determine that statutory rape requires proof of a specific intent to have intercourse with a female under the age of eighteen, mistake of age would be a defense. In that case, a reasonable belief by Stiffler that the fe-

male was at least eighteen years old would disprove the specific criminal intent necessary, i.e., the intent to have sexual intercourse with a female under the age of eighteen.

As directed in *Sterrett*, we first examine the purpose of the law prohibiting statutory rape. In the early part of this century this Court stated that the purpose of our statutory rape law was "to protect girls under the age of eighteen years from conscienceless men, as far as possible." *State v. Henderson*, 19 Idaho 524, 530, 114 P. 30, 32 (1911). More recently we noted that "the prevention of illegitimate teenage pregnancies is one of the objectives behind the statute and that the state has a strong interest in furthering this important governmental objective." *State v. LaMere*, 103 Idaho 839, 843, 655 P.2d 46, 50 (1982). The Court of Appeals in its decision in this case said that the statute "is an attempt to prevent the sexual exploitation of persons deemed legally incapable of giving consent." *Stiffler*, 114 Idaho at 936, 763 P.2d at 309.

▮ Considering the language of the statute in view of these purposes, we construe the statute to require only a general criminal intent to prove a violation. We concede that the protection of girls from conscienceless men is a purpose that would not be violated by a requirement of specific criminal intent before conviction. As to that purpose, it is the conscience or state of mind of the perpetrator that is at issue. Likewise, exploitation focuses on the advantage gained by the perpetrator of the act. This is a state of mind of the perpetrator, not an effect on the female. However, the prevention of illegitimate teenage pregnancies is not consistent with requiring specific criminal intent to prove the crime. Pregnancy could result regardless of the belief that the female was at least eighteen years old. Since the prevention of illegitimate teenage pregnancies was cited in *LaMere* as one of the objectives behind the statute and the state's strong interest in furthering this objective was noted, we are unable to conclude from an examination of this purpose that statutory rape

should be construed to require proof of any specific intent.

*Sterrett* also directs that we examine the design of the statute in determining what intent is required for conviction. The design of the statute at issue here is as follows:

18–6101. **Rape defined.**—Rape is an act of sexual intercourse accomplished with a female under either of the following circumstances:

1. Where the female is under the age of eighteen (18) years.

2. Where she is incapable, through lunacy of any other unsoundness of mind, whether temporary or permanent, of giving legal consent.

3. Where she resists but her resistance is overcome by force or violence.

4. Where she is prevented from resistance by threats of immediate and great bodily harm, accompanied by apparent power of execution; or by any intoxicating narcotic, or anaesthetic substance administered by or with the privity of the accused.

5. Where she is at the time unconscious of the nature of the act, and this is known to the accused.

6. Where she submits under the belief that the person committing the act is her husband, and the belief is induced by artifice, pretense or concealment practiced by the accused, with intent to induce such belief.

Subsections (5) and (6) of this statute indicate clearly that specific criminal intent are required for conviction. Subsection (5) requires knowledge by the accused that the female is unconscious of the nature of the act. The state of mind of the accused defines an essential element of the crime. Likewise, subsection (6) of the statute refers to the accused's intent to induce belief that the accused is the husband of the female. Again, this refers to the accused's state of mind. These examples within the design of the statute indicate to us that the legislature understood the distinction between general criminal intent and specific criminal intent is chose not to require

specific criminal intent to convict of a violation of I.C. § 18–6101(1).

We have also found it instructive in our efforts to determine whether statutory rape is a general intent crime or requires proof of some specific intent to review prior decisions of this Court concerning the intent necessary to convict of other crimes. These cases reinforce our conclusion here.

In *State v. Keller*, 8 Idaho 699, 70 P. 1051 (1902), the defendant was convicted of driving sheep from Utah into Idaho in violation of a quarantine proclamation. The law under which the defendant was convicted made "the act of driving certain sheep into the state unlawful, without regard to the question of the intent of the person doing that act." *Id.* at 708, 70 P. at 1053. The act was characterized as *malum prohibitum* by the Court in 1902. Therefore, the only question was whether the law had been violated—not the intent with which the defendant did the act.

In *State v. Sterrett* the defendant was convicted under a statute that provided: " 'It shall be unlawful for any person ... to transport any intoxicating liquor or alcohol unless the same was procured and is so possessed and transported under a permit as hereinafter provided....' " 35 Idaho at 582, 207 P. at 1072. The Court cited the statute that is now I.C. § 18–114 and said:

> It is apparent that ... the legislature has made the intentional transportation of intoxicating liquor, without legal authority, unlawful and that the good intentions and good faith of the person transporting the liquor is immaterial. In the interest of the public, the burden is placed upon the actor to ascertain at his peril whether his deed is within the prohibition of the statute. Error cannot be predicated upon the action of the court in excluding evidence tending to show the defendant's good intentions and good faith, where a criminal intent is not a necessary element of the offense charged.

*Id.* at 583, 207 P. at 1072 (citations omitted). As in this case, the state of mind of the defendant was not an element of the crime.

In *State v. Taylor*, 59 Idaho 724, 87 P.2d 454 (1939), the defendant was convicted under a statute that provided: " 'Every officer charged with the receipt, safe-keeping or disbursement of public moneys who neglects or fails to keep and pay over the same in the manner prescribed by law, is guilty of felony.' " *Id.* at 733, 87 P.2d at 458. This Court held that the trial court should have given the jury an instruction that the intent required to convict a person of this crime "is not an intent to commit a crime but is merely the intent to knowingly perform the interdicted act, or by criminal negligence the failure to perform the required act." *Id.* at 738, 87 P.2d at 460. The Court noted that "a specific intent such as is necessary in embezzlement, larceny, making false report with intent to deceive, etc., is not an ingredient of an offense" under the statute. *Id.* The words of the statute referring to neglect or failure seemed to direct the Court toward criminal negligence as the basis for conviction. This Court defined "criminal negligence" as used in I.C. § 18–114 to mean gross negligence. *State v. McMahan*, 57 Idaho 240, 256, 65 P.2d 156, 162 (1937). There is nothing in I.C. § 18–6101(1) that invokes the concept of criminal negligence as the statute did in *Taylor*.

In *State v. Scott*, 72 Idaho 202, 239 P.2d 258 (1951), the defendant was accused of killing another person while driving under the influence of intoxicating liquor. The jury was instructed that if they found beyond a reasonable doubt that the defendant was under the influence of intoxicating liquor while operating a motor vehicle and that her operation of her automobile while in that condition was the proximate cause of the death of the victim, they should find the defendant guilty. In affirming a conviction of involuntary manslaughter, this Court said:

> The statute defining involuntary manslaughter, Sec. 18–4006, does not in and of itself provide that intent is an ingredient of the crime, yet it is insisted by defendant that intent is a necessary ingredient in any crime and that there should have been an appropriate instruction on intent given to the jury. This

matter has been disposed of by this court contrary to the contentions of the defendant in several cases. It will be noted from a reading of Sec. 18–4006, Idaho Code, that no evil or criminal intent is necessary in order to commit the act which is by statute made unlawful.

*Id.* at 211, 239 P.2d at 263. Since involuntary manslaughter has been held to be a general intent crime, we cannot conclude that statutory rape requires proof of any specific intent. No more specific intent is required to perpetrate statutory rape than to commit involuntary manslaughter.

In *State v. Cronk*, 78 Idaho 585, 307 P.2d 1113 (1957), this Court held that burglary was a crime *malum in se* as referred to in *State v. Keller* and required the trial court to give an instruction in accordance with I.C. § 18–201 advising the jury that ignorance or mistake of fact would disprove criminal intent. In *Cronk* the Court quoted the statute which defined burglary as entry " 'with intent to commit grand or petit larceny or any felony.' " *Id.* at 590, 307 P.2d at 1115. There is no comparable requirement of intent in the statute defining statutory rape.

In *State v. Nesbitt*, 79 Idaho 1, 310 P.2d 787 (1957), the defendant was convicted of obstructing a public road. This Court upheld the refusal of the trial court to give an instruction to the effect that if the defendant believed the road in which the obstruction was placed was a private road and not a public road, he was incapable because of lack of criminal intent of violating the statute. The Court concluded: "The criminal act complained of by the State is malum prohibitum. The only inquiry is 'has the law been violated?' (citing *Keller* and *Sterrett* ). A wilful act, intentionally done, cannot be excused because the appellant believed, if he did, that the road was a private one." *Id.* at 8, 310 P.2d at 792.

In *State v. Parish*, 79 Idaho 75, 310 P.2d 1082 (1957), this Court reversed the conviction of a defendant who had been convicted under a statute requiring the driver of a vehicle involved in an accident causing injury or death to stop and render aid and furnish information. The Court held that knowledge on the part of the defendant that the accident had occurred was required even though the statute did not expressly require knowledge. The Court relied on decisions from California that implied a requirement of knowledge in this type of statute. The Court appeared to rely heavily on the characterization of the offense by the California courts as one involving " *'the willful omission to render reasonable assistance to one who has been injured.'* " *Id.* at 80, 310 P.2d at 1084 (emphasis in original).

In the same manner, we might be tempted in this case to rely on the decision of the California Supreme Court in *People v. Hernandez*, 61 Cal.2d 529, 39 Cal.Rptr. 361, 393 P.2d 673 (1964). There, the California court held that a reasonable belief that a female had reached the age of consent would be a defense to statutory rape. However, while the California statutes discussed in *Hernandez* were identical to I.C. § 18–114 and § 18–201(1), the California court did not analyze the question in terms of the distinction between general intent crimes and those requiring proof of some specific intent that this Court has developed. Instead, the court in *Hernandez* relied on the fact that it had recently "moved away from the imposition of criminal sanctions in the absence of culpability where the governing statute, by implication or otherwise, expresses no legislative intent or policy to be served by imposing strict liability." *Id.* 39 Cal.Rptr. at 363, 393 P.2d at 675. This has not been the development of the law of criminal intent in this state. We reject the invitation here to discard the distinction between general intent crimes and those requiring proof of some specific intent.

In *State v. Gowin*, 97 Idaho 766, 767, 554 P.2d 944, 945 (1976), the defendant was convicted of embezzlement by a servant. In reversing the conviction this Court said:

The crime of embezzlement by a servant as defined in I.C. § 18–2405 consists of the criminal act which is the fraudulent appropriation by a servant of property of another which has come into his control or care by virtue of his employ-

ment, or the act of fraudulently secreting such property in order to appropriate it to his own use. The statute requires these acts to be done with "fraudulent" intent. The word "fraudulent" is not defined in our criminal code, but this Court has recognized that the term denotes a specific criminal intent requirement.

No word denoting a state of mind appears in the statutory rape statute that would invoke a specific criminal requirement as the word "fraudulent" did in *Gowin.*

These cases indicate the well-established distinction in Idaho between general intent crimes and those requiring proof of some specific intent. This distinction has existed in our law throughout this century. This Court has relied on this distinction in determining when ignorance or mistake of fact is a defense under I.C. § 18–201(1). If we were to accept the applicability of the defense in this case, we would necessarily have to conclude that statutory rape is a crime requiring proof of specific intent to have intercourse with a female under the age of eighteen years. This we are unable to do.

Although we have not relied on them, we are comforted in the result that we have reached by the dicta in *State v. Suennen*, 36 Idaho 219, 209 P. 1072 (1922) and in *State v. Herr*, 97 Idaho 783, 554 P.2d 961 (1976). In *Suennen* this Court noted: "In prosecutions for offenses against minor females, such as statutory rape ..., it is generally held that lack of knowledge on the part of the defendant as to the age of the girl, or even belief on his part that she is over the age mentioned in the statute, is no defense." 36 Idaho at 221, 209 P. at 1072. In *Herr* we said: "Sexual offenses against minors have long been a recognized judicial exception to the general rule that a mistake of fact is a defense to a criminal charge." 97 Idaho at 788–89, 554 P.2d at 966–67.

Also, while we do not consider it to be determinative, we note with interest that in 1971 when the legislature enacted a version of the Model Penal Code for this state, statutory rape was limited to cases where the female was less than twelve years of age. 1971 Idaho Sess.Laws, ch. 143, pp. 630, 683. Contrary to the statement made by the Court of Appeals in this case, that legislation did not establish a mistake of age defense in statutory rape cases, although it did provide a limited mistake of age defense in sexual cases where the criminality depended on the child's being below a critical age other than the age of twelve. 1971 Idaho Sess.Laws, ch. 143, p. 685. This change in our criminal law lasted only from January 1, 1972, until April 1, 1972, when the present law was restored. 1972 Idaho Sess.Laws, ch. 109, p. 223 and ch. 336, pp. 844, 961–62. This interlude indicates that the legislature has contemplated the subject of mistake of age as a defense to sexual offenses such as statutory rape. We cannot ignore the fact that the legislature has failed to take any action to provide specifically for a mistake of age defense, in light of the history of general and specific intent crimes decided by this Court.

### III.

### CONCLUSION.

We affirm the decisions of the Court of Appeals and of the trial court denying Stiffler an instruction that his lack of knowledge or reasonable mistake as to the age of the female with whom he had intercourse would be a defense.

BAKES, C.J., and BOYLE, J., concur.

BOYLE, Justice, specially concurring.

I write specially to express my concurrence in the majority opinion that mistake of the victim's age is not a defense to the crime of statutory rape. Statutory rape is a crime with a unique history and is a recognized exception to the principle that the accused must intend to commit each element of the crime charged. *Morissette v. United States*, 342 U.S. 246, 251, 72 S.Ct. 240, 244, 96 L.Ed. 288 (1952).

In my opinion the issue presented to us on appeal can be resolved by simply holding that mistake of the victim's age is not a defense to the crime of statutory rape. It is not necessary that we place this unique

crime into a general or specific intent crime category or analyze the effect of *mens rea* or make a distinction between acts *mala in se* and acts *mala prohibita* as those principles relate to statutory rape. If I felt it necessary to make an analysis of general and specific intent distinctions I would urge adoption of the language used by Judge Burnett in his special concurring opinion in *State v. McDougall*, 113 Idaho 900, 749 P.2d 1025 (Ct.App.1988). However, I do not feel that is necessary in resolving this case and it is sufficient to conclude that mistake of the victim's age is not a defense to statutory rape. The legislature's adoption of I.C. § 18–201(1) does not change this well-established principle of law as applied to statutory rape. Accordingly, I concur in the result for the reasons stated herein.

McDEVITT, Justice, specially concurring:

I am writing to concur in the majority view that there is no mistake of fact defense to the crime of statutory rape relating to the age of the complainant. There is, however, another predicate upon which to arrive at this result which should be aired.

There is a principle fundamental to our system of criminal law that the intent to commit a crime is a prerequisite to a finding of guilt and imposition of punishment. This principle "is as universal and persistent in mature systems of law as belief in freedom of the human will and a consequent ability and duty of the normal individual to choose between good and evil." *Morissette v. United States*, 342 U.S. 246, 250, 72 S.Ct. 240, 243, 96 L.Ed. 288 (1952). This notion is reflected in the Idaho Code, which makes a person incapable of committing a crime where that person is laboring under ignorance or a mistake of fact "which disproves any criminal intent." I.C. § 18–201(1). The appellant cites this provision in support of his argument that his reasonable mistake as to the complainant's age serves to exculpate him of the crime of statutory rape.

However, statutory rape is a crime that has long been recognized as an exception to the concept that a criminal accused must harbor an intent to commit every element of the crime charged. When the legislature

borrows terms of art in which are accumulated the legal tradition and meaning of centuries of practice, it presumably knows and adopts the cluster of ideas that were attached to each borrowed word in the body of learning from which it was taken and the meaning its use will convey to the judicial mind unless otherwise instructed. In such a case, absence of contrary direction may be taken as satisfaction with widely accepted definitions, not as a departure from them.

*Morissette v. United States*, 342 U.S. at 263, 72 S.Ct. at 250. *See also Lorillard v. Pons*, 434 U.S. 575, 583, 98 S.Ct. 866, 871, 55 L.Ed.2d 40 (1978) (" '[W]here words are employed in a statute which had at the time a well-known meaning at common law or in the law of this country, they are presumed to have been used in that sense unless the context compels the contrary.' ").

Over the course of American legal history, many have asserted a reasonable mistake of fact as to the complainant's age as a defense to the charge. This argument has been repeatedly rejected. *See State v. Ruhl*, 8 Iowa 447 (1859); *Beckham v. Nacke*, 56 Mo. 546 (1874); *State v. Newton*, 44 Iowa 45 (1876); *Lawrence v. Commonwealth*, 30 Gratt. 845 (1878); *State v. Griffith*, 67 Mo. 287 (1878); *Heath v. State*, 173 Ind. 296, 90 N.E. 310 (1910); *State v. Wade*, 224 N.C. 760, 32 S.E.2d 314 (1944); *Commonwealth v. Sarricks*, 161 Pa.Super. 577, 56 A.2d 323 (1948); *State v. Superior Court of Pima County*, 104 Ariz. 440, 454 P.2d 982 (1969); *Nelson v. Moriarty*, 484 F.2d 1034 (1st Cir.1973); *People v. Cash*, 419 Mich. 230, 351 N.W.2d 822 (1984).

Thus, I am persuaded that the legislature, in codifying the crime of statutory rape, intended to incorporate the immemorial tradition of the common law that a mistake of fact as to the complainant's age is no defense.

BISTLINE, Justice, dissenting:

In *State v. LaMere*, 103 Idaho 839, 847, 655 P.2d 46, 54 (1982) (Bistline, J., concurring in part and dissenting in part), I wrote to no avail that Idaho's statutory rape statute should be declared unconstitutional because it violates the Equal Protection clause of the Fourteenth Amendment to the United States Constitution. In light of the United States Supreme Court's recent rulings in gender-based discrimination cases, that argument is even stronger now than it was when first presented in *LaMere*.

*LaMere* contains a thorough discussion of the two seminal cases on this issue, *Meloon v. Helgemoe*, 564 F.2d 602 (1st Cir.1977), *cert. denied* 436 U.S. 950, 98 S.Ct. 2858, 56 L.Ed.2d 793 (1978), and *Michael M. v. Superior Ct. of Sonoma Cty.*, 450 U.S. 464, 101 S.Ct. 1200, 67 L.Ed.2d 437 (1981), and I will not reiterate that argument now. Suffice it to say that the *Meloon* holding, premised on the rationale that statutory rape laws create a classification based on gender and that those laws must therefore receive "mid-tier" scrutiny under the Equal Protection Clause, has been reinforced by Supreme Court reasoning in a number of gender-classification cases, whereas the rational basis standard of *Michael M.* has not found similar favor.[1]

A different perspective on the equal protection argument which focuses on *what* activity is proscribed and *who* is proscribed from doing it is also merited. This is especially true in light of the persistent argument that one of the main reasons that courts continue to not allow a mistake of age defense to statutory rape is the prevalence of teenage pregnancy. This new perspective would point out that our statutory rape law does not discriminate against men so much as it discriminates against

their young female partners. Idaho Code § 18–6101 "proscribes all sex involving underage ... females, but not all sex involving underage ... males.... [A]dolescent women are denied the sexual freedom accorded to men, and they are given in exchange only a weak statutory protection against male sexual aggression. This sort of judicially-compelled contract borders on the unconscionable." L. Tribe, *American Constitutional Law* § 16–28 at 1576 (2 ed. 1988).

Leaving aside the equal protection argument, I would still vote to allow Stiffler the opportunity to present a reasonable mistake of fact defense at trial. One member of the Court in a special concurrence quotes language from *Morissette v. United States*,[2] 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952) which states that "[w]hen the legislature

> borrows terms of art in which are accumulated the legal tradition and meaning of centuries of practice, it presumably knows and adopts the cluster of ideas that were attached to each borrowed word in the body of learning from which it was taken and the meaning its use will convey to the judicial mind unless otherwise instructed. In such a case, absence of contrary direction may be taken as satisfaction with widely accepted definitions, not as a departure from them. *Morissette v. United States*, 342 U.S. at 263, 72 S.Ct. at 250."

117 Idaho at 411, 788 P.2d at 226 (McDevitt, J., concurring specially).

Conceding that this is an excellent statement of the law as a generality, my perception is that it is incorrectly applied to the common law history of statutory rape. Accordingly, I am not fully "persuaded that the [Idaho] legislature, in codifying the crime of statutory rape, intended to incor-

---

1. *See, e.g., Clark v. Jeter*, 486 U.S. 456, 108 S.Ct. 1910, 1914, 100 L.Ed.2d 465 (1988); *Mississippi Univ. for Women v. Hogan*, 458 U.S. 718, 723–24 and n. 9, 102 S.Ct. 3331, 3336 and n. 9, 73 L.Ed.2d 1090 (1982).

2. Wholly understood is the gathering of forces against Stiffler. It is *not* improbable that he did labor under a mistake. His chances of proving that are not all that great. But, if he did succeed it would be because he was able to prove to a jury that the alleged victim's state of maturity

porate the *immemorial*[3] tradition of the common law that a mistake of fact as to the complainant's age is no defense." 117 Idaho at 405, 788 P.2d at 220, (McDevitt, J., concurring specially) (emphasis added). Such is not the "immemorial tradition of the common law." In fact, "reasonable mistake of age has *never* been denied as a defense in an English statutory rape case." Myers, *Reasonable Mistake of Age: A Needed Defense to Statutory Rape*, 64 Mich.L.Rev. 105, 110 (Nov. 1965) (emphasis added) (hereinafter Myers). Mistake as to the age of the victim was briefly held by the English courts to be no defense to the crime of *abduction, Regina v. Prince*, L.R. 2 Cr.Cas.Res. 154 (1875), but that case was quickly overruled by statute, apparently without its reasoning ever being transferred to statutory rape in England.

Courts in the United States, however, did latch on to the *Prince* case, and began using it to justify denying a mistake of fact defense in statutory rape cases.[4] This development was "universally followed" in state courts until the California Supreme Court broke from the pack and decided *People v. Hernandez*, 61 Cal.2d 529, 393 P.2d 673, 39 Cal.Rptr. 361 (1964). *See* Myers, at 110–111. There is, therefore, an American tradition of approximately one hundred years behind the denial of a mistake of fact defense to statutory rape. *However, that tradition was only beginning to develop at the time Idaho's statutory rape statute was enacted in 1887.* The existence of a tradition is of little value for purposes of construing a statute enacted before the tradition developed.

According to *Morissette*, absent "contrary direction," we should assume that the Idaho legislature "[knew] and adopt[ed] the cluster of ideas that were attached to each borrowed word in the body of learning from which it was taken", *Morissette*, 342 U.S. at 263, 72 S.Ct. at 250, when it "borrowed" the definition of statutory rape.

Such "contrary direction" is entirely lacking. Idaho Code § 18–6101(1), which in the state of Idaho establishes the crime known as statutory rape, was originally enacted by the territorial legislature in 1887. This was long after the enactment in 1864 of what is now I.C. § 18–201, which provides:

> All persons are capable of committing crimes, except those belonging to the following classes ... (1) Persons who committed the act or made the omission charged, under an ignorance or mistake of fact which disproves any criminal intent.

Idaho Code § 18–6101 contains no language which excepts the crime defined therein from the provisions of Section 18–201. If an exception is not expressly included in a statute, one will not be implied through statutory construction. *Roberts v. Mississippi Repub. Party State Exec. Comm.*, 465 So.2d 1050 (Miss.1985); *see generally* Sutherland, *Statutes and Statutory Construction* § 47.11 (Sands 4th Ed. 1984). We should therefore assume that the legislature knew and adopted the reasonable mistake of fact defense to statutory rape which existed at English common law and at American common law before 1875.

Refusal to recognize a mistake of age defense to statutory rape also continues an archaic practice which is no longer in step with modern values or practical reality. Statutory rape laws were originally enacted to protect *very young girls* under the age of *ten or twelve. Myers*, at 110. Such children were assumed to be incapable of consent because, due to their immaturity, they lack the "capacity to understand the nature and implication of the sexual act." *Id.*, at 119. Idaho Code § 18–6101, however, proscribes sexual intercourse with a female under the age of *eighteen*. Anyone having access to the newspapers or to a television and who is also blessed with com-

---

brought her to the equivalency of an eighteen to twenty year old girl.

**3.** Some very learned authors and jurists here made it very clear that, although the tradition of the common law may be "immemorial," that it

is not immutable has been the genius of the common law.

**4.** *See, e.g., Baker v. State,* 377 So.2d 17, 19 (Fla. 1979); *State v. Superior Ct. of Pima Cty,* 104 Ariz. 440, 454 P.2d 982, 984 (1969).

mon sense knows that teenagers in American society are very knowledgeable about sexual activity and that they understand what they are doing when they do it. In fact, society encourages some knowledgeability for the sake of a child's safety.[5]

This is not to say that young people of *either sex* should necessarily be shorn of all protection in this area. But it does support the argument that an individual should at least have the opportunity to defend himself (*or herself*) on the grounds that the female in question looked, acted, and/or asserted herself to be over the statutorily prescribed age.

Since Stiffler was denied the opportunity to present such a defense, his conviction should be vacated and the cause remanded for a new trial.

---

5. According to a recent newspaper account, Idaho has a high standing among the states in regard to adolescent teenage pregnancies. It is doubtful that the statute, although it may have been effective fifty or seventy years, has had any genuine effect on that situation.