**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

NOV 20 2019

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| STEPHEN PORTER STUBBS; KEVIN DESMAIRAS,<br><br>                  Plaintiffs-Appellants,<br><br>  v.<br><br>LAS VEGAS METROPOLITAN POLICE DEPARTMENT; YASENIA Y. YATOMI, Lieutenant,<br><br>               Defendants-Appellees. | No.   17-16160<br><br>D.C. No.<br>2:15-cv-02152-JCM-GWF<br><br><br>MEMORANDUM[*] |

Appeal from the United States District Court
for the District of Nevada
James C. Mahan, District Judge, Presiding

Argued and Submitted October 11, 2018
San Francisco, California

Before:  TASHIMA and MURGUIA, Circuit Judges, and CHATIGNY,[**] District Judge.

Stephen Stubbs appeals the District Court's order granting summary

judgment for Defendants Las Vegas Metropolitan Police Department ("LVMPD")

---

[*]      This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]     The Honorable Robert N. Chatigny, United States District Judge for the District of Connecticut, sitting by designation.

and Lt. Yasenia Yatomi. Stubbs brought claims against Lt. Yatomi under 42 U.S.C. § 1983 for false arrest and malicious prosecution. He also brought claims against the LVMPD for *Monell* liability based on an alleged policy of harassing motorcycle club members in violation of the Fourth Amendment. All claims are premised on Stubbs's allegedly unconstitutional arrest during a traffic stop of his client, Kevin Desmairas, a member of the Bikers for Christ ministry group. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

We review a grant of summary judgment *de novo*. *See Save the Peaks Coal. v. U.S. Forest Serv.*, 669 F.3d 1025, 1031 (9th Cir. 2012). "Summary judgment is appropriate when, viewing the evidence in the light most favorable to the non-movant, there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law." *Frudden v. Pilling*, 877 F.3d 821, 828 (9th Cir. 2017). We may affirm a grant of summary judgment on any ground supported by the record. *Simo v. Union of Needletrades, Indus. & Textile Emps., Sw. Dist. Council*, 322 F.3d 602, 610 (9th Cir. 2003).

Summary judgment for Lt. Yatomi on Stubbs's false arrest and malicious prosecution claims was proper because the record establishes that Stubbs's arrest was supported by probable cause. Probable cause to arrest exists if, "at the moment the arrest was made[,] the facts and circumstances within [a officer's] knowledge and of which they had reasonably trustworthy information were

2

sufficient to warrant a prudent [person] in believing" that a crime had been committed. *Hunter v. Bryant*, 502 U.S. 224, 228 (1991) (alterations added). In addition to defeating a claim of false arrest, "probable cause is an absolute defense to malicious prosecution." *Lassiter v. City of Bremerton*, 556 F.3d 1049, 1054–55 (9th Cir. 2009).

Lt. Yatomi arrested Stubbs for violating Nevada Revised Statutes § 197.190, which makes it unlawful to "willfully hinder, delay or obstruct any public officer in the discharge of official powers or duties." The record establishes that Lt. Yatomi repeatedly ordered Stubbs to step away from Desmairas while the officers completed the traffic stop, and Stubbs refused to comply. Stubbs's refusal to comply with Lt. Yatomi's repeated orders prolonged the traffic stop and diverted police attention from the primary purpose of the stop—issuing a traffic citation to Desmairas. *See Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1146–47 (9th Cir. 2012). Thus, Lt. Yatomi had a sufficient basis for believing that Stubbs had committed *acts* "hinder[ing], delay[ing] or obstruct[ing]" her in "the discharge of [her] official powers or duties." Nev. Rev. Stat. § 197.190.

The record also establishes that probable cause existed to warrant a belief that Stubbs had the requisite *mens rea* to commit a violation of the statute. *See* Nev. Rev. Stat. § 197.190 (obstruction must be committed "willfully"). As the Nevada Supreme Court has explained, an act is done "willfully" when it is "done

3

intentionally, deliberately or designedly, as distinguished from an act done accidentally, inadvertently, or innocently." *Robey v. State*, 611 P.2d 209, 210 (Nev. 1980). It is undisputed that Stubbs intentionally refused to comply with Lt. Yatomi's repeated orders that he step away. Her orders were "suited to the occasion," *Colten v. Kentucky*, 407 U.S. 104, 109–10 (1972), and thus lawful. Stubbs was armed with a firearm, and "[t]raffic stops are 'especially fraught with danger to police officers.'" *Rodriguez v. United States,* 135 S. Ct. 1609, 1616 (2015) (quoting *Arizona v. Johnson*, 555 U.S. 323, 330 (2009)).[1]

Though Stubbs does not couch his argument in these terms, we take his position to be that he could not have possessed the requisite *mens rea* to commit a violation of the statute because he intended to act as Desmairas's attorney—not to interfere with the officers' discharge of official duties.[2] Stubbs points to no case, and we are aware of none, holding that the right to counsel authorizes an attorney to: (1) stand shoulder-to-shoulder with his client; (2) during a traffic stop; (3) while armed with a firearm; and (4) refuse repeated, reasonable law enforcement

---

[1] Further demonstrating that Stubbs acted with the requisite intent, before arresting Stubbs, Lt. Yatomi confirmed that he was impeding their investigation and that he refused to stop doing so: "You refused to leave while we conduct[ed] our investigation, is this correct?" To which Stubbs answered "Yes." And Lt. Yatomi had apparently warned Stubbs not to interfere with traffic stops in the past.

[2] Stubbs testified that he refused to comply with Lt. Yatomi's orders to step away because he wanted to be in a position to intercede if she asked Desmairas questions unrelated to the stop.

4

requests to step aside. We have serious doubts that the right to counsel encompasses such conduct. *See, e.g.*, *Colten*, 407 U.S. at 109 ("The State has a legitimate interest in enforcing its traffic laws and its officers were entitled to enforce them free from possible interference or interruption from bystanders, even those claiming a third-party interest in the transaction."). But we need not resolve this question because, whatever Stubbs's motive might have been, the facts and circumstances established by the record were sufficient to warrant a prudent officer's belief that he was willfully—that is, intentionally—hindering, delaying, or obstructing Lt. Yatomi in the lawful discharge of her duties by refusing to comply with her orders to step away during the pendency of the traffic stop. *See Hunter*, 502 U.S. at 228.

Summary judgment for Lt. Yatomi on Stubbs's false arrest and malicious prosecution claims was therefore properly granted. Concluding otherwise would require the type of "excessively technical dissection" of probable cause the Supreme Court has cautioned against. *District of Columbia v. Wesby*, 138 S. Ct. 577, 588 (2018). Moreover, because Stubbs suffered no constitutional injury from his arrest, his *Monell* claims against the LVMPD also fail as a matter of law. *See Ruvalcaba v. City of Los Angeles*, 167 F.3d 514, 518 (9th Cir. 1999).

**AFFIRMED.**

5

*Stubbs v. LVMPD*, No. 17-16160

TASHIMA, Circuit Judge, dissenting:

Because the majority, in affirming the district court's grant of summary

judgment in favor of Defendants LVMPD and Lt. Yatomi, the moving parties,

resolves controverted issues of material fact in Defendants' favor and ignores

applicable Nevada Supreme Court precedent in construing the Nevada obstruction

statute, I respectfully dissent.

The majority's conclusion that Lt. Yatomi had probable cause to arrest

Stubbs under Nevada Revised Statute § 197.190 rests on the erroneous conclusion

that the undisputed facts established a reasonable belief that Stubbs possessed the

*mens rea* required to violate the statute.  Not so.  Section 197.190 makes it

unlawful to "*willfully* hinder, delay or obstruct any public officer in the discharge

of official powers or duties."  (Emphasis added.)  Thus, under *Scott v. First Jud.*

*Dist. Ct.*, 363 P.3d 1159 (Nev. 2015), § 197.190 imposes a specific intent

requirement.  *See id* at 1163 & n.4 (explaining that the term "willfully" in an

obstruction statute imposes a specific intent requirement).  That is, to violate the

statute, a person must not only in fact hinder, delay, or obstruct an officer, but must

also *specifically intend* that his actions have that effect.  On this record, that Stubbs

possessed the required *mens rea* has not been established as an uncontroverted fact.

The majority instead suggests that it is enough that Stubbs intentionally

insisted on remaining next to Desmairas in order to serve as his counsel—despite Lt. Yatomi's directives that Stubbs move away—even if Stubbs did not intend for his actions to illegally hinder, delay, or obstruct LVMPD officers. The majority thus elides the *mens rea* requirement, treating § 197.190 as requiring only general intent, not specific intent.

Importantly, it also is highly likely that the majority's flawed interpretation of the "willfully" requirement renders § 197.190 unconstitutionally vague and overbroad under directly applicable Nevada Supreme Court precedent. In *Scott*, the Nevada Supreme Court held unconstitutional an obstruction ordinance that had language very similar to § 197.190, but notably, lacked a specific intent requirement.[1] *See* 363 P.3d at 1161. First, because the provision's expansive language was not cabined by a specific intent requirement and could apply to protected speech, the Nevada Supreme Court invalidated the obstruction ordinance as unconstitutionally overbroad on its face.[2] *See id.* at 1163, 1165 (noting that the

_____

[1] Specifically, the ordinance at issue in *Scott* made it "unlawful for any person to hinder, obstruct, resist, delay, molest or threaten to hinder, obstruct, resist, delay or molest any . . . member of the sheriff's office . . . in the discharge of his official duties." *Id.*

[2] In doing so, the Nevada Supreme Court pointed out that in *Colten v. Kentucky*, the U.S. Supreme Court ruled that a similar statute that possessed a specific intent requirement—namely an "intent to cause public inconvenience,

(continued...)

provision at issue "prohibits *any* conduct that may 'hinder, obstruct, resist, delay, [or] molest' a police officer, regardless of intent"); *id.* at 1167 (Hardesty, C.J, concurring in part and dissenting in part) (suggesting that, in order to address the constitutional concerns, the provision should be limited by requiring "an intent to interfere with an officer, which would substantially narrow and clarify the ordinance's meaning"). Second, the Nevada Supreme Court held that the ordinance was void for vagueness under the Due Process Clause of the Fourteenth Amendment because it "lack[ed] sufficient guidelines and g[ave] the sheriff too much discretion in its enforcement," in that it was "entirely within the deputy's discretion to determine what conduct violates the ordinance and at what point that conduct—including speech—reaches a level that 'hinder[s], obstruct[s], resist[s], delay[s], or molest[s]' him or her in the discharge of their duties." *Id.* at 1164–65.

---

[2](...continued)
annoyance or alarm"—was not overbroad due in part to that specific intent requirement, which limited the statute's reach. *See id.* at 1162 (discussing *Colten v. Kentucky*, 407 U.S. 104, 108–09 (1972)). In comparison, in *City of Houston v. Hill*, the U.S. Supreme Court held that a similar ordinance that lacked a specific intent requirement and was "not narrowly tailored to prohibit only disorderly conduct or fighting words" was facially invalid. *Id.* (quoting *Hill*, 482 U.S. 451, 465 (1987)). The Nevada Supreme Court then concluded that the provision at issue in *Scott* was more similar to the ordinance deemed unconstitutional in *Hill*, because "[u]nlike the statute in *Colten*, which required specific intent, [the obstruction provision here] does not contain a specific intent requirement." *Id.* at 1162–63.

3

Section 197.190 shares many of the characteristics deemed to be problematic in the obstruction ordinance at issue in *Scott* when interpreted as the majority does without a specific intent requirement. By its terms, § 197.190 "encompasses protected speech," "is not narrowly tailored to prohibit only disorderly conduct or fighting words," and "lacks specific standards" such that "the enforcing officer has discretion over deciding whether a particular unenumerated circumstance supplies the necessary probable cause for arrest." *Id.* at 1163–64 (internal quotations marks omitted). As a result, in order to avoid rendering § 197.190 constitutionally infirm, the word "willfully" in § 197.190 must be read as imposing a specific intent requirement.[3] *See, e.g.*, *Edmond v. United States*, 520 U.S. 651, 658 (1997) (noting that judges must avoid interpreting a statute "in a manner that would render it clearly unconstitutional" if there is another reasonable interpretation available).

Applying the specific intent requirement to this case, a jury could find that the facts were not sufficient to warrant a prudent officer in believing that Stubbs

---

[3] The Neveda federal district court also has interpreted § 197.190 as requiring specific intent. *See Blankenship v. Cox*, 2007 WL 844891, at \*6 (D. Nev. Mar. 19, 2007) ("Flight does not, per se, constitute a violation of 197.190," because "there are many reasons why an individual might flee from the police, many of them unrelated to *a desire to obstruct the police in their duties*." (emphasis added)). The court in *Blankenship* concluded that a reasonable jury could find that the police officer did not have probable cause to arrest the juvenile defendant for "obstructing a public officer" by fleeing. *Id.*

4

possessed the *mens rea* required to violate § 197.190.  There is little, if any,

evidence that Stubbs specifically intended to obstruct Lt. Yatomi in the legal

discharge of her duties.[4]  In fact, there is ample evidence to the contrary.  First and

foremost, Stubbs' conduct and uncontroverted statements evince that his intent was

to serve as Desmairas' counsel and ensure that Desmairas was not inappropriately

questioned or pressured.[5]  In fact, this is exactly what Stubbs had been doing until

Yatomi arrived—he was "being professional" and cooperating amicably with

Sergeant Williams and Officer Del Rosario, had explicitly agreed to let Officer Del

Rosario do his job, and exhibited no intent to obstruct or hinder the officers in

carrying out the traffic stop proceedings, nor, according to the officers, had Stubbs

in fact done anything to obstruct the traffic stop investigation.  Once Lt. Yatomi

arrived on the scene, Stubbs repeatedly insisted that Desmairas had a Fifth

Amendment right to counsel, and made clear that he wanted to remain alongside

Desmairas in order to serve as his counsel, even offering to let Lt. Yatomi take his

---

[4]     Notably, the state court judge trying the obstruction charge stated on the record, "I think there is no evidence that's presented before this Court prima faciely beyond a reasonable doubt to show he willingly hindered the investigation. It's quite the opposite."

[5]     At his deposition, Stubbs testified that he was at the scene, "number one, to make sure that there's no question as to [Desmairas'] relationship with the police. And second—secondly, to make sure that this isn't one of those stops to where they're asking for more information."

side arm to address any safety concerns.

Because Stubbs' conduct demonstrated that he was acting with the purpose of representing and advocating for his client, albeit vigorously, but *not* with the explicit purpose of impeding police officers in the discharge of their official duties, a jury could very well find that a prudent officer could not have believed that Stubbs possessed the specific intent required to violate § 197.190, and that Lt. Yatomi therefore lacked probable cause to arrest Stubbs for obstruction.[6]

_____

[6] The majority attempts to evade this conclusion by focusing on whether Desmairas had a right to counsel in this scenario. But that question is irrelevant to Stubbs' state of mind. Even if Stubbs did not have a legal right to be present as counsel, he clearly believed that he did, which is the relevant inquiry in determining the purpose which motivated his actions. And the intent to act as a client's counsel (mistaken or not) cannot be equated with the required *mens rea* of specifically and willfully hindering, delaying or obstructing an officer in the performance of her duty.

What's more, Stubbs' arguing with Lt. Yatomi about whether the right to counsel existed itself could not have supported a permissible arrest for obstruction. Courts have held that mere interruption or arguing with a police officer is not sufficient to support an arrest for obstruction because "the First Amendment protects a significant amount of verbal criticism and challenge directed at police officers." *Hill*, 482 U.S. at 461; *see also Velazquez v. City of Long Beach*, 793 F.3d 1010, 1019 (9th Cir. 2015) ("Ninth Circuit law . . . clearly establishes the right verbally to challenge the police, and verbal protests cannot support an arrest under [California's obstruction statute]."). Indeed, "[s]peech is often provocative and challenging. . . . [But it] is nevertheless protected against censorship or punishment, unless shown likely to produce a clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance, or unrest." *Hill*, 482 U.S. at 461 (quoting *Terminiello v. Chicago*, 337 U.S. 1, 4 (1949)). Here, Stubbs' repeated assertions that Desmairas had a Fifth Amendment right to

(continued...)

Because it is a controverted issue of material fact whether Stubbs possessed the required *mens rea* of specific intent to violate § 197.190, I would reverse the grant of summary judgment to Defendants and remand for trial. I therefore respectfully dissent.

---

[6](...continued)
counsel, and his pleadings to Yatomi to listen to him, did not "produce a clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance, or unrest." *See id.*